Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEBRASKA

|  |  |
|---|---|
| LISA KILKER,<br><br>               Plaintiff,<br><br>    v.<br><br>JOHN EWING, JR., in his official capacity as<br>MAYOR OF THE CITY OF OMAHA,<br><br>            Defendant. | Case No.: _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Trial Location: Omaha** |

## NATURE OF THE ACTION

This is a First Amendment action challenging the suppression of Lisa Kilker's ("Plaintiff") protected speech publicly criticizing the City of Omaha's failure to address a dangerous sinkhole in the heart of downtown Omaha. In January 2025, a garbage truck fell into the street at 16th and Harney Streets, expanding an existing hole into a sinkhole. Ten months later, the hazard remains, and the City refuses to address the damage the sinkhole caused to Plaintiff's building. After Ms. Kilker posted comments on Mayor John Ewing, Jr.'s official Facebook page criticizing the City's inaction, the Mayor deleted her comments and blocked her from accessing or viewing the page. Plaintiff seeks to view the Mayor's page and express her opinion, but she is technologically prohibited from doing so. Plaintiff brings this action against

Mayor Ewing in his official capacity for engaging in viewpoint-based censorship that violated Plaintiff's First Amendment rights.

## JURISDICTION AND VENUE

1.      This action arises under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.

2.      The Court has federal question jurisdiction under 28 U.S.C. § 1331.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the events giving rise to the claims occurred in Omaha, Nebraska, and because Defendant resides in this District.

## PARTIES

4.      Plaintiff Lisa Kilker is a citizen and resident of Omaha, Nebraska.

5.      Defendant John Ewing, Jr., is the Mayor of Omaha, Nebraska. He is sued only in his official capacity.

## DEFENDANT MAINTAINS AN OFFICIAL FACEBOOK PAGE

6.      Defendant maintains and operates a Facebook page titled "Mayor John W. Ewing, Jr." The page contains frequent posts about City operations, public safety alerts, infrastructure updates, and other matters of municipal governance.

7.      A search of the public Facebook website reveals that The Mayor John W. Ewing, Jr. page is open to the public. *See* https://www.facebook.com/profile.php?id=61577947671649



2

8.     Defendant and his staff use the page to issue public statements, solicit resident feedback, and respond to community questions concerning city business. The page invites public comments and interaction and is presented to the public as an official channel of communication between the Mayor's office and residents.



9.     The Mayor's Page states that the page is for a "Government Official" and lists the City of Omaha's Phone Number, address and website. The email address of the Mayor's Deputy Chief of Staff for Communications is also listed there.

10.     Mr. Ewing also maintains two other Facebook pages, a personal page and a Campaign page.

11.     The "Mayor John Ewing, Jr." page is linked to and promoted through City communications, distinguishing it from a private or campaign accounts.

### THE MAYOR USES HIS PAGE FOR OFFICIAL COMMUNICATIONS

12.     The Mayor frequently uses his Facebook page for official communications in his capacity as Mayor of Omaha.

13.     For instance, on August 9, 2025, the Mayor extended condolences on behalf of the people of Omaha to a storm victim in Iowa.



14.     On August 18, 2025, the Mayor posted official statements about the leadership of the Omaha Fire Department. Overseeing the Fire Department is one of the Omaha Mayor's duties.



15.    On September 17, 2025, the Mayor posted about what he was doing to celebrate his 100th official day in office as Mayor.



16.    On September 26, 2025, the Mayor communicated to citizens about an upcoming City event, as he posted twice about the Omaha parade route honoring Bud Crawford.





17.     Some of Defendant's posts were open to comments and Defendant commonly interacted with the public.



**THE MAYOR'S FACEBOOK PAGE IS A DESIGNATED PUBLIC FORUM**

18.     Social media websites are not public fora generally.

19.     However, when a person with governmental authority opens an official social media page, the official's posts and the space for commenting are designated public in which

viewpoint discrimination is prohibited. *See Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019); *Lindke v. Freed*, 601 U.S. 187, 198 (2024).

20.    Defendant uses his official Facebook page for posts about official duties of the Mayor's office, such as leadership at the Fire Department, parades, parking, storms, and proclamations to or on behalf of the people of Omaha.

21.    Defendant's use of the Mayor's Facebook page and censorship of Plaintiff constitutes state action because:

a.    He possessed actual authority to speak on behalf of the City regarding municipal operations, public safety, and infrastructure, and

b.    He purports to exercise that authority when using the page to issue official communications.

22.    The "Mayor John Ewing, Jr." page is materially distinct from the personal campaign account at issue in *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021), where the Eighth Circuit found no state action because the legislator's Twitter account "not converted into a tool of governance." *Id.* at 827. In contrast, Defendant's Facebook page here functions as an instrument of governance and public communication, not personal or campaign activity.

**THE CITY'S FAILURE TO ADDRESS THE SINKHOLE AT 16TH ST**

23.    Plaintiff Lisa Kilker is an Omaha resident and owner of a condominium unit at the Regis Condominium Building at 312 S 16th St. This is on 16th St, between Harney and Farnam Streets, in the heart of downtown Omaha, just blocks from the courthouse.

24.    Since at least 2024, Plaintiff has urged City officials, including Defendant and Defendant's predecessor, to repair sewer failures causing damage to the Regis building.

25.    Officials first tried to cordon off the hole in the ground.



26.     However, on January 3, 2025, that effort failed when *a large Waste Management*

*truck fell into the sinkhole*. A crane was needed to lift the truck out of the sinkhole.



27.     The sinkhole truck incident was covered by USA Today.[1]

28.     Engineering reports, including those by Performance Engineering, Inc. dated December 2024 and correspondence from Philadelphia Insurance Company and counsel for the Regis Condominium Associations dated March 31, 2025, attribute these failures to the City's negligent maintenance of its sewer and alleyway infrastructure.

29.     The reports describe voids, sewer collapses, and subgrade failures adjacent to the Regis Building and warn that the City's inaction has created continuing hazard to both public safety and private property.

30.     These conditions have also required the Omaha Public Power District ("OPPD") to repeatedly access the same alley and adjoining right-of-way to repair electrical wires and conduits damaged or exposed by ground movement and subsidence caused by the sinkhole. Each time OPPD has made repairs, the instability of the area has caused new damage to the same utility infrastructure, reflecting the City's continuing failure to stabilize and restore the site.

31.     The repeated need for OPPD repairs, along with the engineering reports and citizen complaints, placed Defendant and other City officials on actual notice of the ongoing and worsening subsurface failures in the area.

**MAYOR EWING SOUGHT TO STIFLE CRITICISM OF THE SINKHOLE**

32.     The Mayor is aware of the 16th Street sinkhole issue. During his campaign, Ewing acknowledged the issue publicly and expressed support for addressing it.

---

[1] Lagatta, Eric. "Video Captures Sinkhole Where Garbage Truck Crash Knocked Out Power for Parts of Omaha." *USA Today*, 3 Jan. 2025, www.usatoday.com/story/news/nation/2025/01/03/garbage-truck-sinkhole-omaha-nebraska/77431575007/
.

33.     The Mayor appeared to champion the issue himself as a candidate, "taking to the streets Tuesday, criticizing the city's response to [the] sinkhole."[2]

34.     Ewing personally toured the basement of the Regis, saying at that time "To me, it means number one being responsive. When there's an issue, one of the things I do, even as the treasurer, when somebody reaches out to us, I make sure somebody responds."



35.     On May 3, 2025, as a mayoral candidate, Ewing attended an event with Plaintiff outside the sinkhole to show his support and raise awareness.



---

[2] McLoon, Alex. "Douglas County Treasurer John Ewing Jr., Mayor Jean Stothert Spar over Omaha Streets, Potholes." *KETV*, 15 April 2025, www.ketv.com/article/omaha-mayoral-race-ewing-stothert-spar-streets-potholes/64489920
.

36.    After assuming office, however, Defendant failed to direct repairs or initiate mitigation despite continued citizen complaints, engineering warnings, and utility disruptions.

37.    Plaintiff seeks to view the Mayor's page and continue to express her opinion on this matter.

## MAYOR EWING CENSORING MS. KILKER'S SPEECH
## IN A DESIGNATED PUBLIC FORUM IS STATE ACTION

38.    On or about October 10, 2025, Plaintiff Kilker posted comments on the Mayor's Facebook page criticizing Defendant's failure to act on the Regis sinkhole despite repeated warnings.

39.    Ms. Kilker stated: "The Regis building residents have just had to take out a $1 million dollar loan to pay for repairs for the sinkhole. You ran a campaign on promising to help us. What happened to these promises??"



40.     However, shortly after Plaintiff stated her criticism, Defendant deleted Plaintiff's comment and blocked her entirely from even viewing the Mayor's page.

41.     On October 13, 2025, Plaintiff attempted to access the Mayor's page, but her computer displays a message that says "This content isn't available right now. When this happens, it's usually because the owner only shared it with a small group of people, changed who can see it or it's been deleted."

42.     Defendant's act of blocking Plaintiff was undertaken while he was purporting to exercise his official authority as Mayor in maintaining an online forum for public communication. His moderation decisions were thus made under color of state law. *See Lindke v. Freed*, 601 U.S. 187, 198 (2024).

### THE MAYOR BLOCKED PLAINTIFF'S SPEECH
### ON MATTERS OF PUBLIC CONCERN

43.     The Mayor's Facebook page constitutes a designated public forum under the First Amendment because it is intentionally opened by Defendant for public announcements and discourse. The page invites citizen engagement, permits public comment, and functions as a channel for the dissemination of governmental information and the solicitation of feedback on municipal affairs.

44.     By maintaining an interactive social media page devoted to official City business, Defendant created and administered a digital space in which citizens could speak directly to their elected official regarding matters of public concern.

45.     Plaintiff's Facebook comment addressed a matter of significant public concern— the City's ongoing failure to maintain public infrastructure and the use of taxpayer funds to repair the dangerous sinkhole near 16th and Harney Streets. Plaintiff seeks to continue to express

her opinion that the sinkhole is a hazardous condition and public nuisance that the City fails to address responsibly.

46.    Speech addressing governmental inefficiency, public safety, and accountability lies at the core of the First Amendment's protection. *Rankin v. McPherson*, 483 U.S. 378, 387 (1987).

47.    By blocking Plaintiff for expressing criticism on these issues, Defendant suppressed protected citizen commentary on matters of significant public concern.

**VIEWPOINT DISCRIMINATION IS PROHIBITED IN DESIGNATED PUBLIC FORA**

48.    Defendant's decision to delete Plaintiff's post and block her from the Mayor's page was motivated by disagreement with her viewpoint—specifically, her criticism of Defendant's handling of the Regis sinkhole and related infrastructure issues.

49.    Defendant's exclusion of Plaintiff from the designated public forum based on the viewpoint she expressed constitutes impermissible viewpoint discrimination in violation of the First Amendment. *See West v. Shea*, 500 F. Supp. 3d 1079 (C.D. Cal. 2020).

50.    Defendant's conduct deprived Plaintiff of her right to participate in public discourse, to petition her government for redress, and to access information disseminated by her elected officials. She cannot access, including other things, emergency alerts, event announcements, or updates regarding public events disseminated through the page.

**FIRST AMENDMENT VIOLATION**
**42 U.S.C. § 1983**
**AGAINST DEFENDANT MAYOR JOHN EWING, JR.**

51.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

52.    Under *Lindke v. Freed*, 601 U.S. 187 (2024), a public official's social-media activity constitutes state action when the official (1) has actual authority to speak on behalf of the government, and (2) purports to exercise that authority when using the social media platform.

53.    Defendant possessed actual authority, as Mayor, to speak for the City of Omaha on matters of municipal governance and purported to exercise that authority when operating the Mayor's Facebook page.

54.    By blocking Plaintiff from the page because she criticized his official conduct, Defendant acted under color of state law to engage in viewpoint-based discrimination, violating the First Amendment.

55.    Defendant's conduct is distinct from the private campaign use found nonactionable in *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021), because Defendant's page was used as an official instrument of communication and governance, not a campaign forum.

56.    Defendant's conduct caused Plaintiff to suffer deprivation of her constitutional rights, emotional distress, and the chilling of her speech.

57.    Plaintiff seeks declaratory and injunctive relief restoring her access to the forum, and ability to comment in designated areas, as well as nominal and compensatory damages, and attorney's fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare that Defendant's deleting Plaintiff's comment and blocking of her from the Mayor's Facebook page was viewpoint discrimination and violated Plaintiff's First Amendment rights under color of law;

B.   Issue injunctive relief requiring Defendant to restore Plaintiff's access and prohibiting future viewpoint-based blocking from official social-media accounts;

C.   Award Plaintiff compensatory and nominal damages in an amount to be determined at trial;

D.   Award Plaintiff attorney's fees and costs under 42 U.S.C. § 1988; and

E.   Grant such further relief as the Court deems just and proper.

Dated: October 13, 2025                    Respectfully submitted,

By: s/ Mark L. Javitch
Bar Number: CA 323729
Attorney for Plaintiff
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Fax: (650) 300-0343
Email: mark@javitchlawoffice.com