| | | |
|---|---|---|
| LISA KILKER, | ) | CASE NO. 8:25-CV-614 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JOHN W. EWING, JR.'S |
| | ) | BRIEF IN OPPOSITION TO MOTION |
| JOHN EWING, JR., | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Defendant Mayor John W. Ewing, Jr. ("Ewing"), sued in his official capacity, respectfully moves this Court for an Order denying summary judgment to Plaintiff Lisa Kilker ("Kilker") upon Count II, which accuses Ewing of retaliatory removal of a post made to his official Facebook page on October 4, 2025. The removal happened after Ewing had already blocked Kilker and deleted her comment, and it took away <u>all</u> of the post's remaining comments – positive ones. Undisputed facts prove that Ewing directed removal of the post to maintain consistency with his ordinary practice of not allowing comments to any posts on his official Facebook page. Summary judgment should be denied as to Kilker's Count II because retaliatory animus did not motivate the Post's removal.

## UNDISPUTED FACTS

1. Ewing has a Facebook page titled "Mayor John W. Ewing, Jr." (the "Page"). CM/ECF #39, Defendant Mayor John W. Ewing, Jr.'s Index of Evidence in Opposition to Motion for Summary Judgment ("Index"), Exhibit 1, Defendant's Responses to Plaintiff's First Set of Discovery Requests, Answers to Interrogatories No. 1 and No. 3 ("Interrogatory Answers").

2. From its inception in late June, 2025, Ewing intended for the Page not to allow comments. *Id.* He made this decision based upon examples of Facebook pages from the Nebraska

Governor (a page that generally does not allow comments) and from previous Omaha Mayor Jean Stothert's (whose page did). *Id.*

3. For months, Erin Grace, the Deputy Chief of Staff, Communications ("Grace"), administered the Page while Ewing did not, and he did not have the ability to post directly to it. *Id.*

4. In August 2025, Meta suspended the account as being a suspected imposter since it was linked to Grace and not to Ewing's other accounts. *Id.* Grace could no longer access the Page. *Id.* Bobby Wernli, City IT Coordinator ("Wernli"), worked extensively with Meta to reinstate it. *Id.*

5. The Page was reinstated August 27, 2025 after Meta recommended adding Ewing as an administrator and linking the Page to his other Facebook pages to show it was not a fraud or a spoof. *Id.* This enabled Ewing to post to the Page, which required disabling the comment function on a post-by-post basis. – something Ewing did not always do. *Id.*

6. On October 4, 2025, Ewing posted an uplifting message on the Page (the "Post") and Kilker added her comment to it on October 10, 2025. *Id.*

7. Some time on either Friday, October 10, or Saturday, October 11, 2025, Ewing read Kilker's comment and, viewing it as harassment, deleted it and blocked her from the Page. *Id.*

8. Ewing talked with Grace about the Post on Monday, October 13, 2025, a holiday during which City offices were closed; and he instructed her to unblock Kilker and to remove the entire Post to maintain consistency with the intended policy of not allowing any comments – favorable or otherwise – to posts on the Page. *Id.*

9. Kilker filed suit October 13, 2025, a holiday; but at the time Ewing told Grace to remove the entire Post neither one knew Plaintiff had filed suit because of the holiday. *Id. See also* Index, Exhibit 2, Declaration of John W. Ewing, Jr. ("Ewing Decl.") at ¶10. Ms. Grace removed the entire October 4, 2025 post (comments included) and unblocked Kilker on either October 13 or 14, 2025. Index, Interrogatory Answers. *See also* Index, Exhibit 4, Declaration of Erin Grace ("Grace Decl.") at ¶5. Had Grace known about this lawsuit, she would not have removed the Post without checking with legal counsel. *See* Interrogatory Answers.

10. Ewing did not direct Grace to remove the Post and its comments because of this lawsuit. Ewing Decl. at ¶9. He did not even know of this lawsuit until Omaha City Attorney Matt Kuhse told him about it after seeing a notification of its filing October 14, 2025. *Id.* at ¶10. *See also* Index, Exhibit 3, Declaration of Matt Kuhse ("Kuhse Decl.") at ¶¶ 3- 4.

11. Although the original Post could not be restored more than thirty (30) days after its removal, Grace has been able to work with others to re-create it by using screenshots Kilker included in her filings in the federal court. Grace Decl. at ¶¶ 7 – 8.

12. On March 26, 2026, Grace posted the re-creation of the Post on the Page. *Id*. at ¶ 8, Exhibit "A". The commenting function will be enabled through June 30, 2026. *Id*. After that, the commenting function will be disabled to restore uniformity with Ewing's intended practice of deactivating the commenting function for all posts to the Page. *Id*.

13. Kilker is not blocked from the Page; and she hasn't been since October 13 or 14, 2025. *Id*. at ¶9.

**LEGAL STANDARD**

"Summary judgment is proper when the movant shows that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *RSA 1 Limited Partnership v. Paramount Software Associates, Inc*., 793 903, 906 (8th Cir. 2015). "The movant must identify portions of the record that he 'believes demonstrate the absence of a genuine issue of material fact,'" *Id*. (quoting *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "After that, 'the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id*. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party if those facts are genuinely disputed. *Togerson, supra,* 643 F.3d at 1042.

Summary judgment must be denied if the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). In making this determination, inferences drawn from facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra*, 477 U.S. at 255.

**ARGUMENT**

Ewing is sued in his official capacity, which makes this a lawsuit against the City. *Johnson v. Outdoor Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999). The City has long conceded Count I, which addresses Kilker being blocked from the Page for two or three days during October, 2025. Summary proceedings were never necessary in relation to Count I.

As to Count II, the City had the right to remove the Post since it was not required to

indefinitely hold the Page's comments open to the public. *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 868 (8th Cir, 2023) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948 (1983)). It is legally significant that removal of the Post applied to everyone – regardless of viewpoint. *Id.* ("The City closed the limited public forum to everyone, not just speakers with certain views.")

To establish a First Amendment retaliation claim based upon the deletion of the entire Post, Kilker must show that she engaged in a protected activity, that the City took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and that there was a but-for causal connection between the City's retaliatory animus and the deletion of the Post. *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023). "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398, 139 S.Ct. 1715 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695 (2006).

"To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* (quoting *Hartman*, 547 U.S. at 259). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (italics in original). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399 (quoting *Hartman, supra*, 547 U.S. at 260). In *Nieves*, the Supreme Court recognized that even actions with some degree of bad motive are not unconstitutional if they would have been taken anyway." *Id*. (quoting Hartman, *supra*, 547 U.S. at 260). The significance of non-retaliatory grounds for an action are plain: "If an official takes adverse action against someone based on that forbidden

motive, <u>and</u> 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id*. (underlining added).

Here, summary judgment is inappropriate as to Count II because Ewing's non-retaliatory motive is sufficient to justify removal of the Post. *See Nieves, supra* (non-retaliatory grounds must be insufficient to support the challenged action). Ewing removed the Post to maintain consistency with his intended policy of not allowing any comments – favorable or otherwise – to posts on the Page. Ewing Decl. at ¶¶ 3, 4, 5, and 8, and Grace Decl. at ¶¶ 3 and 5. When the Post was removed, Kilker had already been blocked and her comment had already been removed. Ewing Decl. at ¶8, and Grace Decl. at ¶5. Consequently, the Post's removal impacted only the remaining – and positive - commenters. While Kilker casts Ewing's effort to maintain consistency as being retaliation against *her*, there is no dispute that removal of the Post happened *after* she had been blocked and her comment deleted, and it applied to *everyone*. Removal took away positive comments and restored consistency with the intended practice of not allowing comments of any sort on the Page. Ewing Decl. at ¶ 8, and Grace Decl. at ¶ 5. Thus, taking the Post down did not show preference for any particular commenter; and when Kilker was unblocked on October 13 or 14, 2025, she was situated exactly the same as every other follower of the Page. Finding retaliatory animus under these circumstances requires ignoring this important temporal sequence and granting Kilker the benefit of unreasonable inferences, turning summary judgment proceedings on its head. *See Davis v. City of Little Rock*, 122 F.4th 326, 329 (8th Cir. 2024) (even the non-moving party that is ordinarily entitled to having evidence believed and all justifiable inferences drawn in its favor cannot rely upon unreasonable inferences or sheer speculation.)

On a related issue, to whatever extent Kilker argues that removal of the Post was retaliation specifically for her commencement of this lawsuit, the evidence is undisputed that Ewing did not even know Kilker had filed suit when acted. *See* Interrogatory Answers, Ewing Decl. at ¶¶ 9, 10, and 11., Grace Decl. at ¶6, and Kuhse Declaration at ¶¶ 3 - 4. The neutrality of the removal further undermines the entirely speculative, contrafactual conclusion that Ewing directed the Post's removal in retaliation for filing a lawsuit he did not yet know about.

Last, the Court should deny Kilker's effort to brush aside the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Final decision-making authority over a particular function is not the same thing as policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82, 106 S.Ct. 1292 (1986). While policy may be inferred from a single decision taken by the highest official responsible for setting policy in a particular area of local government's business (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915 (1988)), state (or local) law determines who actually has that authority. *Id.* at 483. *See also Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 660-61 (8th Cir. 2007) (local law is a source for consulting when distinguishing decision-making authority and actual policy making power). There is a gap between Ewing's discretionary decision-making authority in relation to his official Facebook page and an official City policy affirmatively directing him to block Kilker and to remove her comment from the Post. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (municipal policy or custom must be the moving force behind the constitutional violation). The record is clear that disabling the comment functions on his official Facebook page is Ewing's ordinary practice. Ewing Decl. at ¶ 3. At best, there remains a question of fact as to whether local law empowered Ewing with final policymaking authority with respect to the entire City's social media, and this Court should deny summary judgment in relation to the City's *Monell*-based affirmative defense.

**CONCLUSION**

Ewing and the City have admitted fault where the facts support it. *See* CM/ECF 30, Answer to First Amended Complaint, p. 1. But they cannot do that in relation to Kilker's Count II because this claim hinges upon an alleged motive Ewing simply did not possess. The City respectfully requests this Court enter an Order denying summary judgment on Count II.

Dated this 3rd day of April 2026.

JOHN EWING, JR., Defendant

By: s/Timothy K. Dolan
Timothy K. Dolan, No. 20978
Assistant City Attorney
City Law Department
Omaha/Douglas Civic Center
1819 Farnam Street, Suite 804
Omaha, Nebraska 68183
Telephone (402) 444-5115
Fax (402) 444-5125
Email tim.dolan@cityofomaha.org

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2026, I electronically filed the foregoing Defendant Ewing's Brief in Opposition to Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to parties using the system.

s/ Timothy K. Dolan