IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LISA KILKER,<br><br>             Plaintiff,<br><br>   vs.<br><br>JOHN EWING, JR., in his official capacity<br>as Mayor of the City of Omaha;<br><br>             Defendant. | **8:25CV614**<br><br><br>**MEMORANDUM AND ORDER** |

This is a First Amendment lawsuit against the Mayor of Omaha for deleting a comment Plaintiff, Lisa Kilker, left on his Facebook post. It comes before the Court on Plaintiff's motion for summary judgment, Filing No. 37, and the Court's sua sponte solicitation of briefing on the question of a jury versus bench trial, Filing No. 42. For the reasons set forth herein, the Court grants in part and denies in part Plaintiff's motion for summary judgment and finds Plaintiff is entitled to a jury trial.

## I.   BACKGROUND

Plaintiff, Lisa Kilker, is resident of Omaha, Nebraska, and lives in the Regis Condominium Building. Filing No. 37-4 at 1. In January 2025, a large sinkhole opened near the Regis Building at 16th and Harney Streets. *Id.* at 2. While a candidate for mayor, Defendant John Ewing, Jr., campaigned in part on addressing the sinkhole. *Id.* Ewing was elected mayor in May 2025, but by October of that year, the sinkhole issue at the Regis remained. *See id.* at 3.

Ewing operates a Facebook page entitled "Mayor John W. Ewing, Jr." Filing No. 39-2 at 1. On October 4, 2025, Ewing reposted a constituent's positive comment about him on the mayoral Facebook page. Filing No. 29 at 11–12. The constituent's post stated

1

in part, "I support John W Jr Ewing [sic] and any decision he makes. He is a man with integrity and compassion." *Id.* at 12.  Ewing's repost used the hashtags "#PublicService" and "#Empathy." *Id.*  On October 10, Kilker saw this Facebook post and noted there were approximately eighteen comments from members of the public on the post, largely supportive of the mayor, and including at least one comment to which Ewing had replied. Filing No. 37-4 at 3.  Kilker made her own comment on the post: "The Regis building residents have just had to take out a $1 million loan to pay for repairs for the sinkhole. You ran a campaign on promising to help us. What happened to those promises??" Filing No. 29 at 12.

According to Ewing, he read Kilker's comment on either Friday, October 10, or Saturday, October 11, 2025.  Filing No. 39-2 at 1.  Ewing viewed the comment as harassment, so he deleted her comment and blocked Kilker from the entire Mayor John W. Ewing, Jr. Facebook page.  *Id.* at 2.  On Monday, October 13, 2025, a city holiday, Ewing told his Director of Communications to unblock Kilker from the page but to delete the entire post including all comments.  *Id.*  Ewing states that he intended to use the Facebook page to provide information to members of the public and that he "ordinarily deactivate[s] the commenting function for posts made to the Page." *Id.* at 1.  However, the October 4 post on which Kilker commented and several other posts around that time erroneously allowed public commenting since "[d]eactivation must be done on a post-by-post basis." *Id.*

Kilker filed the present lawsuit on Monday, October 13, 2025.  Filing No. 1.  Ewing states that due to the holiday, he was not aware of the lawsuit until the following business

2

day, October 14, and had already ordered his staff to delete the post when he learned of the lawsuit. Filing No. 39-2 at 2.

In the operative amended complaint, Kilker asserts two causes of action against Ewing in his official capacity pursuant to 42 U.S.C. § 1983 for violation of her First Amendment rights: for viewpoint discrimination based on deleting her comment and blocking her from the page and for retaliatory and arbitrary closure of a designated public forum. Filing No. 29 at 15–16. Kilker seeks a declaration that Ewing violated her First Amendment rights; an injunction requiring Ewing to restore her delete comment, requiring Ewing to restore her access to his page, and prohibiting future viewpoint-based blocking from his social media; compensatory and nominal damages; and attorney's fees and costs. Filing No. 29 at 16–17. In his answer, Ewing asserts that Kilker fails to state a claim for municipal liability. Filing No. 30 at 3.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

3

case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251

### III.   ANALYSIS

Kilker moves for summary judgment on both First Amendment claims she makes in her Amended Complaint and on Ewing's affirmative defense of no municipal liability. The Court also addresses the question of whether Plaintiff is entitled to a jury trial.

#### A. Count I: Viewpoint Discrimination

In Count I, Kilker alleges a claim under 42 U.S.C. § 1983 for a violation of her First Amendment rights for discriminating on the basis of her viewpoint. Filing No. 29 at 15. Kilker argues that by deleting only her comment and blocking her from his page, the Mayor engaged in unlawful viewpoint discrimination. Ewing concedes liability on this claim. The parties agree the remedy is the only question remaining as to Count I. Accordingly, the Court grants Plaintiff's motion for summary judgment on Count I.

#### B. Count II: Retaliation

Kilker's second claim is entitled "First Amendment Violation / Retaliatory and Arbitrary Closure of a Designated Public Forum / 42 U.S.C. § 1983." Count II asserts a First Amendment violation pursuant to 42 U.S.C. § 1983 for Ewing deleting his original post entirely and stopping all public commenting "[a]fter Plaintiff filed this lawsuit." Kilker moves for summary judgment on this claim, which Ewing opposes.

In her brief, Kilker argues she is entitled to summary judgment on Count II because the "deletion [of the Facebook post] constitutes a second, independent First Amendment violation." Filing No. 37-1 at 11. She states, "Count II does not sound in retaliation" and urges the Court not to apply the test for First Amendment retaliation. *Id.* at 12. Instead, she argues the Court should find Ewing has conceded Count II by admitting to deleting

the post, and should apply strict scrutiny to find this "viewpoint-infected" action was unconstitutional. *Id.* at 12–15.

While Kilker's brief may very well set forth accurate law, it is not the law applicable to the claim she asserts. Her amended complaint is clear that Count II is a cause of action for retaliation for engaging in protected speech. Not only does Kilker herself call it "retaliatory" in her amended complaint, the entire claim is premised upon Ewing's deletion of the post and closure of comments *because* Kilker posted the negative comment and sued him. Kilker cannot rewrite her cause of action by now making a different argument in her brief. *Accord Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs . . . ."); *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017) ("A plaintiff may not amend [her] complaint through argument in a brief . . . ."), *aff'd on other grounds*, 897 F.3d 987 (8th Cir. 2018).

Reading Kilker's cause of action as it was pled, the Court applies the law pertaining to First Amendment retaliation. To establish a claim for First Amendment retaliation, Kilker must prove 1) she engaged in protected expression; 2) Ewing took an adverse action that would chill a person of ordinary firmness from continuing the activity; and 3) there was a but-for causal connection between Ewing's retaliatory animus and Kilker's injury. *Brandy v. City of St. Louis*, 75 F.4th 908, 914–15 (8th Cir. 2023). To establish the causal connection, Kilker must show she was "singled out" because of the exercise of her constitutional rights. *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021).

The parties agree that Kilker engaged in protected expression and that Ewing took an adverse action, but several disputed material facts as to causation preclude the

6

granting of summary judgment in Kilker's favor.  Ewing asserts his motivation in deleting the post and disabling comments was to comply with his policy of not allowing public comments on any of his posts.  However, Ewing admits this was not the only post on which he allowed comments, and he also replied favorably to at least one of the other, positive comments, potentially undermining his claim that allowing comments was his uniform, intended policy as opposed to a response to Kilker's comment and lawsuit.  Resolving this conflicting evidence will require a credibility determination by the factfinder.

Ewing also notes that at the time he deleted the post, he had already deleted Kilker's comment.  This calls into question Kilker's assertion that Ewing's deletion of the post (as opposed to deletion of her comment) could be a First Amendment violation as there is evidence his action affected all members of the public equally rather than "singling" her out.

Lastly, Ewing avers he was unaware Kilker had filed this lawsuit at the time he ordered his communications director to delete the post and disable comments.  Should the factfinder credit this testimony, it would undercut Kilker's claim that Ewing was motivated to retaliate against her due to the lawsuit.

Due to these numerous factual disputes, the factfinder will be required to determine whether Ewing was motivated by retaliation.  Kilker is not entitled to summary judgment on Count II.

## C. *Monell* Affirmative Defense

In his Answer, Ewing asserts, as an affirmative defense, that Kilker fails to state a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), because "City of Omaha policies and customs do not reflect the state of mind necessary for

imposition of municipal liability." Filing No. 30 at 3. Ewing argues, "There is a gap between Ewing's discretionary decision-making authority in relation to his official Facebook page and an official City policy affirmatively directing him to block Kilker and to remove her comment from the Post." *See* Filing No. 38 at 7.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Indep.*, 829 F.3d 695, 699 (8th Cir. 2016). The Supreme Court has elaborated on when a municipal official's decision crosses the line into "policy-making":

> [W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) (citations omitted).

Ewing's assertion that he may have lacked authority to set social media policy for his official Facebook page is belied by the evidence in the record. The City's human resources policy regarding social media states, "All City of Omaha social media sites created, generated, posted, or used by the City departments are subject to the approval of the Mayor's Office." Filing No. 37-7 at 40. That Ewing had ultimate policy-making authority over the Facebook page is also supported by the facts in this case: Ewing was the one to decide what to post and what to delete, such as when he ordered his Director of Communications to delete the October 4 post.

8

This is not a situation where a municipal employee's one-time decision does not support holding the city liable for his or her actions. Rather, the city's top-decision maker was given the authority to set official social media policy for the municipality and exercised that authority in administering his official Facebook page, including his decisions to delete Kilker's comment and block her from the page. Ewing's affirmative defense is without merit and Kilker is entitled to summary judgment on that basis.

### D. Right to a Jury Trial

Lastly, the Court solicited briefing on the question of whether Kilker is entitled to a jury trial in this matter as she has demanded. For her two First Amendment causes of action, Kilker asks the Court for declaratory relief, injunctive relief, compensatory and nominal damages, and attorney's fees and costs. Filing No. 29 at 16–17. Ewing argues Kilker is not entitled to a jury trial because her request for nominal damages could be as little as $1. By contrast, Kilker argues her request for monetary damages entitles her to a jury, regardless of what the eventual award might be.

Section 1983 does not itself confer a jury-trial right, so the Court must examine whether the Seventh Amendment provides Kilker with such a right. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999). The Court must first determine whether the cause of action was tried at law at the time of the founding or whether an analogous cause of action existed at the time of the founding. *Id.* In deciding whether the claim is one of common law, or analogous to a common law claim, the court examines the remedy sought and determines whether it is legal or equitable in nature. *See Tull v. United States*, 481 U.S. 412, 417–18 (1987) (citations omitted). Suits at common law are legal in nature; therefore, the plaintiff preserves his constitutional right

9

to a jury trial. *Id.* at 418. Suits in equity are not subject to the same protections. *Monterey,* 526 U.S. at 708. If the court determines that the answer to the first question is in the affirmative, then the next inquiry is whether the trial decision must fall to the jury in order to preserve the substance of the common-law right as it historically existed. *Id.*

The Court first inquires whether the § 1983 claim is analogous to a claim at common law. The Court finds that the § 1983 claim is analogous to a tort claim, which traditionally has been a claim at common law. *See id.* at 709 ("Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law.").

The Court also examines the remedy sought. Ewing focuses solely on Kilker's request for nominal damages and argues it is insufficient to provide a jury trial right, but this ignores that Kilker's amended complaint also seeks compensatory damages. The Mayor's skepticism of Kilker's ability to substantiate damages in any significant amount at trial may ultimately prove correct, but her request for compensatory money damages nevertheless renders her claim legal in nature.

The Court concludes a jury trial is necessary to preserve the substance of the common law right as it historically existed on Kilker's § 1983 First Amendment claims. Kilker is entitled to a jury trial on her claim for damages. The Court will decide Kilker's requests for equitable relief.

## IV.    CONCLUSION

For the reasons set forth herein, Kilker's motion for summary judgment is granted in part and denied in part. The Court further finds that Kilker's jury demand shall not be stricken.

10

IT IS ORDERED:

1.  Plaintiff's motion for summary judgment, Filing No. 37, is granted as to liability on Count I and Ewing's *Monell* affirmative defense, but is denied as to Count II.

2.  The Court finds Plaintiff is entitled to a jury trial on her request for damages. Her requests for equitable relief will be tried to the Court.

Dated this 26th day of May, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

11